**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: February 04 2010

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 09-33194 |
| | ) | |
| Kenneth S. Pleat and | ) | Chapter 7 |
| Denise J. Pleat, | ) | |
| | ) | |
| Debtors. | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION

This case is before the court on the United States Trustee's ("the UST") motion to dismiss Debtors' Chapter 7 case for abuse under 11 U.S.C. § 707(b)(1) and (3) [Doc. # 14] and Debtors' response [Doc. # 20]. The court held a hearing on the motion that Debtors, their counsel and counsel for the UST attended in person and at which the parties presented testimony and other evidence in support of their respective positions. The district court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 84-1 of the United States District Court for the Northern District of Ohio. Proceedings to determine a motion to dismiss a case under § 707(b) are core proceedings that this court may hear and decide. 28 U.S.C. § 157(b)(1), (b)(2)(J) and (O).

At the hearing, counsel for the UST stated that he was proceeding against Kenneth Pleat only and was not pursuing relief as to Denise Pleat. Having considered the briefs and arguments of counsel and having reviewed the record in this case, for the reasons that follow, the court will deny the UST's motion.

**BACKGROUND**

Debtors are married and have no dependents. Kenneth Pleat ("Pleat") is fifty-six years old and works as a technical analyst for the Federal Reserve Bank of Cleveland, where he has been employed for two years. He previously worked for sixteen years as an information technology specialist in Florida. He and his wife moved to Ohio in order to help care for his mother-in-law, who is eighty years old. Before their move, Pleat had lost his position as an information technology specialist in Florida and spent approximately one and a half years searching for employment in Ohio. During that time, he obtained his license to sell insurance in order to supplement their household income.

For the past two years, Denise Pleat has been employed on a seasonal basis at the Cedar Point amusement park in Sandusky, Ohio, earning $7.40 per hour and working up to forty hours per week. In 2008, she earned between $7,000 and $8,000. However, her income decreased in 2009 because Cedar Point delayed her start date. In 2009, she earned approximately $6,000. She has been unemployed since September 2009 and is receiving no unemployment compensation. She testified that she will be able to reapply to work at Cedar Point during the next season but that there is no guarantee that she will be hired. Before moving to Ohio, she worked for the clerk of courts in a Florida state court. She recently learned that she needs to have surgery on her elbow and, after a six-week recovery, a second surgery on her wrist.

On May 13, 2009, Debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code, stating that their debts are primarily consumer debts. Their Schedule D shows secured debt for which they are jointly liable in the amount of $134,225, which is secured by a mortgage on their home valued by Debtors at $163,360, and secured debt for which Pleat is individually liable in the amount of $14,172, which amount is secured by a 2007 Harley Davidson motorcycle valued by him at $15,000.

Their bankruptcy schedules show no unsecured priority debt and $55,186 of unsecured nonpriority debt for which Pleat is either jointly or individually liable. His total unsecured debt includes $34,816 of credit card debt and $20,370 of debt owed under two car leases, one for a 2008 Honda driven by Pleat and the other for a 2007 Ford driven by his wife. Debtors are current on their lease payments and have stated an intention to reaffirm both leases. In addition to Debtors' home and Pleat's Harley Davidson, Schedule B shows Pleat's other assets include a life insurance policy with a surrender value of $7,678 and two IRA's valued at $72,236 and $932, all of which he claims as exempt on Schedule C. Schedule B also shows an IRA in his wife's name in the amount of $11,848.

Debtors' Schedule I shows gross monthly income in the combined total amount of $6,002, which includes income attributed to Denise Pleat in the amount of $1,026. While this amount correctly reflected

her income at the time of filing in May 2009, it does not reflect the fact that she was employed only on a seasonal basis and that her employment ended in mid-September. As she earned approximately $6,000 during 2009, her income on average is only approximately $500 per month on an annualized basis. Debtors' actual average gross monthly income then is approximately $5,500. Making an appropriate adjustment to the payroll taxes and social security withholding set forth in Schedule I, Denise Pleat's average monthly income after payroll deductions is approximately $425. Kenneth Pleat's monthly income after payroll deductions, which include a $99 voluntary contribution to a 401(k) plan, is $3,585. Debtors' actual combined monthly income after payroll deductions is, therefore, approximately $4,010 on an annual basis.

Debtors' Schedule J shows total monthly expenses of $4,506, resulting in an average monthly budget shortfall of $496. Their expenses include lease payments of $380 for the 2008 Honda, the lease for which expires in approximately three years, and $380 for the 2007 Ford Fusion, the lease for which expires in May 2010, and a motorcycle payment in the amount of $264. At the time of the hearing, Debtors were current on these payments. Also included in their expenses, among other things, is a mortgage payment of $1,053, and expenses of $120 for cable television, $350 for food, $625 for transportation, $125 for recreation, and $115 for automobile insurance.

Debtors' amended Form B22A calculating the means test shows that their annualized current monthly income at the time of filing this case was $62,347. The median income for a family the size of Debtors' family in Ohio is $52,922. However, no presumption of abuse arose under § 707(b)(2) after the calculation of allowed deductions. Instead, the UST is proceeding on his timely filed motion to dismiss for abuse solely under § 707(b)(3) based on the totality of the circumstances. The United States Trustee bears the burden of proof on the motion. *In re Wright*, 364 B.R. 640, 643 (Bankr. N. D. Ohio 2007),

## **LAW AND ANALYSIS**

Where debts are primarily consumer debts, as in this case, the court may, after notice and a hearing, dismiss a Chapter 7 petition "if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7]." 11 U.S.C. § 707(b)(1). Under § 707(b)(3), in determining whether granting relief would be an abuse, the court is required to consider "(A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(A) and (B). This provision was added by Congress in 2005 as a part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Compared to the inherently objective "means test" measurement of abuse added by Congress in § 707(b)(2), analysis of the totality of the circumstances under § 707(b)(3) "offers a more subjective test that requires a case-by-case analysis of a

debtor's financial situation and course of conduct to determine abuse." *In re Lamug*, 403 B.R. 47, 52 (Bankr. N.D. Cal. 2009); *In re Kaminski*, 387 B.R. 190, 194-95 (Bankr. N.D. Ohio 2008).

Before BAPCPA, courts considered whether to dismiss a case for "substantial abuse" under § 707(b) based on the "totality of the circumstances." *See, e.g., In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *In re Price*, 353 F.3d 1135, 1139 (9th Cir. 2004). The Sixth Circuit explained that "substantial abuse" could be predicated upon either a lack of honesty or want of need, to be determined by the totality of the circumstances. *Krohn*, 886 F.2d at 126. Congress incorporated this judicially created construct in § 707(b)(3). Although pre-BAPCPA case law applying these concepts is still helpful in determining abuse under § 707(b)(3), under BAPCPA Congress has lowered the standard for dismissal in changing the test from "substantial abuse" to "abuse." *In re Mestemaker*, 359 B.R. 849, 856 (Bankr. N.D. Ohio 2007).

In this case, the UST does not argue that Pleat filed his petition in bad faith but instead contends that the totality of his financial circumstances demonstrates that Pleat is not needy and that granting him a discharge would be an abuse of the provisions of Chapter 7. A debtor is "needy" when "his financial predicament warrants the discharge of his debts" in a Chapter 7 case. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434 (6th Cir. 2004). Factors relevant to determining whether a debtor is "needy" include the ability to repay debts out of future earnings, which alone may be sufficient to warrant dismissal under some circumstances. *Krohn*, 886 F.2d at 126. Other factors include "whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities." *In re Bender*, 373 B.R. 25, 30 (Bankr. E.D. Mich. 2007); *In re Burge,* 377 B.R. 573, 577 (Bankr. N.D. Ohio 2007); *see Krohn*, 886 F.2d at 126.

The UST's argument at the hearing that Pleat is not needy was based in large part on the fact that he owns exempt assets valued at nearly three times the amount of his unsecured debt. In particular, the UST points to Pleat's life insurance policy with a cash value of $7,678, IRAs valued at $73,168, and equity in his home, which is valued at approximately $14,500.[1] The UST argues that Pleat is trying to leave bankruptcy with his exempt assets intact while shedding his unsecured debt. The court does not believe this is a factor that warrants a finding of abuse in this case, either in isolation or in combination with the other facts of this case. Rather, it is a scenario that is specifically provided for under the Bankruptcy Code. *See*

---

[1] This amount represents Pleat's one-half interest in the scheduled equity in Debtors' home.

4

11 U.S.C. § 522(b). Exemptions are intended to protect certain property of a debtor from the reach of most creditors. *See Rousey v. Jacoway*, 544 U.S. 320, 322 (2005). The Bankruptcy Code also protects exemptions from impairment by most creditor judgment liens. *See* 11 U.S.C. § 522(f). The purpose for allowing individual debtors to claim exemptions in bankruptcy is to further the fresh-start policy of the Bankruptcy Code. *See id.* at 325; *In re Cordy*, 254 B.R. 413, 414 (Bankr. N.D. Ohio 2000). There is no evidence that Pleat converted non-exempt assets to exempt assets or otherwise manipulated his financial circumstances to boost his exemptions on the eve of bankruptcy. The court therefore declines the invitation to impose its own judgment under § 707(b)(3) on Debtor's proper use of exemptions that Congress has expressly authorized and protected under § 522.

In *Kornfield v. Schwartz*, 164 F.3d 778 (2d Cir. 1999), cited by the UST at the hearing, the court agreed that the existence of exempt assets can be relevant to a debtor's ability to pay his debts and could be considered in evaluating the totality of the circumstances under § 707(b). *Id.* at 784. As an example, the court explained that "a pension plan with substantial assets is at least relevant to a debtor's need to put aside portions of future income to provide for old age." *Id.*; *see In re Haddad*, 246 B.R. 27, 33 (Bankr. S.D.N.Y. 2000) (stating that the existence and size of pension plans and retirement funds are factors considered by the court because they impact on the debtor's current need to set funds aside for the future). While this court agrees with that approach, *see In re Osting,* Case No. 09-30254, 2009 Bankr. LEXIS 2387, *7-*10, 2009 WL 2611222, *3 (Bankr. N.D. Ohio Aug. 21, 2009), there is no suggestion in *Kornfield* that exempt assets themselves must be considered as available to debtor for payment of his debts, as this would negate the meaning and purpose of an "exemption," nor does it suggest that the mere fact of a debtor's ownership of exempt assets in excess of the amount of his unsecured debt constitutes an abuse of the provisions of Chapter 7. Although in *In re Palmer*, 117 B.R. 443 (Bankr. N.D. Iowa 1990), also cited by the UST at the hearing, the court found the fact that the debtor could exit Chapter 7 with $86,000 of exempt property that consisted primarily of pension plan funds and home equity while discharging $35,000 of unsecured debt was a factor warranting dismissal for abuse, for the reasons discussed above, the court respectfully disagrees with that analysis in the absence of exacerbating circumstances that are not present in this case.[2]

---

[2]Other cases not cited by the UST at the hearing might be read to stand for the proposition advanced by the UST, as cited in a footnote to a law review article that criticizes such a holding as one that "punishes a debtor for exercising a right expressly provided for in section 522(b) of the Bankruptcy Code." David Gray Carlson, *Means Testing: The Failed Bankruptcy Revolution of 2005*, 15 Am. Bankr. Inst. L. Rev. 223, 246 n. 183(2007). Most of the cited cases involve retirement plan assets and have holdings that are more subtle, along the lines of this court's interpretation of *Kornfield. E.g., In re Dorwarth,* 258 B.R. 293, 295-96 (Bankr. S.D. Fla. 2001). In several of them, the existence of exempt assets is noted, but the role of the exempt assets in finding abuse is as one of several relevant factors or is otherwise unclear. *E.g., In re Helmick*, 117 B.R. 187 (Bankr. W.D. Pa. 1990)(exempt jet ski). To the extent that the cases cited in the footnote stand for the proposition that too much exempt property

The UST also points to Pleat's 401(k) contributions and payments to retain his Harley Davidson in arguing that he is not needy and that he has the ability to redirect these funds to repay a meaningful portion of his unsecured debt.

In determining whether 401(k) contributions are a reasonably necessary expense, the court must consider the totality of the debtor's financial circumstances. *See Behlke*, 358 F.3d at 435-36 (considering the fact that the debtors had accumulated retirement savings as well as other personal and real property of potentially significant future value and finding substantial abuse where debtors' 401(k) contributions in the amount of $460 per month were not necessary for the maintenance and support of the debtors or their dependents); *In re Tucker*, 389 B.R. 535, 540-41 (Bankr. N.D. Ohio 2008) (addressing the precedent established by *Behlke* and concluding that it, as well as the plain language of § 707(b)(3), requires consideration of the totality of the debtor's individual circumstances in determining whether a debtors' 401(k) contributions are reasonably necessary); *In re Beckerman*, 381 B.R. 841, 848-49 (Bankr. E.D. Mich. 2008); *In re Gonzalez*, 378 B.R. 168, 174 (N.D. Ohio 2007). As one court stated, "[t]here is little reason for a 'fresh start' that will only be answered with a substantial incapacity to provide for oneself at retirement." *In re King*, 308 B.R. 522, 531 (Bankr. D. Kan. 2004). Therefore, debtors may seek bankruptcy relief while voluntarily saving for retirement if such savings appear reasonably necessary for the maintenance or support of the debtor or the debtor's dependents. *Hebbring v. U.S. Trustee*, 463 F.3d 902, 907 (9th Cir. 2006). Factors relevant to this determination include: (1) the debtor's age and time left until retirement; (2) the amount of the debtor's existing retirement savings; (3) level of yearly income; (4) overall budget; (5) amount of monthly contributions; (6) needs of any dependents; and (7) other constraints that make it likely that retirement contributions are reasonably necessary expenses for this particular debtor. *In re Beckerman*, 381 B.R. at 848 (citing *Hebbring,* 463 F.3d at 907, *In re Taylor,* 243 F.3d 124, 129-30 (2d Cir. 2001)).

In this case, Debtors' household income at the time of filing wass above the median income for a family of two in Ohio. Pleat has accumulated retirement savings of approximately $73,000 while his wife has accumulated approximately $12,000. Other assets that may enhance their retirement include their home and Pleat's life insurance policy. The UST offers no evidence as to what level of savings is necessary to reasonably provide for oneself in retirement. Debtors' retirement, while not imminent as they could have nine years or more of productive work lives ahead of them, is at least a concern given the level of their retirement savings, which amount the court does not find to be exorbitant. Pleat's contribution of $99 per

---

is an abuse, none of them are binding authority on or persuasive to this court.

month is approximately 2% of his income, which amount appears conservative in light of his age and his wife's minimal retirement savings. *See In re Tucker*, 389 B.R. at 541 (finding that debtors' monthly 401(k) contribution of approximately $135, or less than 2.5% of his income, and his 401(k) loan repayment of $234, or approximately 4% of his income, were neither extravagant nor unusual). While the court infers that Debtors will be entitled to collect Social Security at retirement, the UST offers no evidence of any other retirement income that will be available to them. The court cannot conclude from the record before it that, given Pleat's age and accumulated retirement savings and his wife's minimal retirement savings, the modest contributions to his 401(k) plan are not reasonably necessary expenditures. As the court stated in *Tucker*, "abuse of the provisions of Chapter 7 implies 'some sort of action that crosses over a line of appropriateness. It permits consideration of surrounding factors so that abusive use of repayment of retirement plan loans and additional contributions to retirement plans can be separated from legitimate uses.'" *Id.* at 540 (quoting *In re Vansickel*, 309 B.R. 189, 209 (Bankr. D. Kan. 2004)). In this case, the record before the court does not support a finding that Pleat's continuing 401(k) contributions are abusive.

With respect to Pleat's monthly Harley Davidson payment of $264, Pleat testified that he rides the motorcycle to work when the weather permits in order to save on gas and parking expenses and to keep the mileage down on his leased vehicle. The court agrees that this expense is not reasonably necessary and can be eliminated. It is clear that unsecured creditors, until recently, have been subsidizing such payments through Debtors' use of their credit cards. But such use has come to an end. Debtors' monthly budget, modified as discussed above to reflect Denise Pleat's seasonal employment, results in an average shortfall of $496. Thus, continued payment on three vehicles cannot be sustained. Although Pleat stated an intention to reaffirm the Harley Davidson debt, he has not done so and the time for doing so has expired. *See* Fed. R. Bankr. P. 4008(a). Nevertheless, even if he eliminates this expense, some financial belt-tightening must still occur in order that Debtors' household budget breaks even on a monthly basis. Having reviewed Debtors' expenses, the court is confident that such belt-tightening can occur.

In determining whether granting Pleat relief under Chapter 7 would be an abuse, the court has also considered the fact that he now has relatively stable employment and regular income and is, therefore, eligible for adjustment of his debts through Chapter 13 since his debts are less than the statutory eligibility limits. *See* 11 U.S.C. §§ 109(e), 101(30). However, the court has also considered the fact that Denise Pleat's employment is less than stable, as it is seasonal with no guarantee that she will be rehired during the next season. As a result, although Pleat has regular income, Debtors' household income is somewhat unpredictable. In any event, if Pleat eliminates the Harley Davidson expense, he will still have household

7

expenses of $232 in excess of Debtors' average monthly household income. As discussed above, the court believes that Debtors can make additional reductions in expenses in order to address this shortfall in their budget. However, the court finds little or no room for additional funds beyond that to be made available to fund a Chapter 13 plan or otherwise pay unsecured creditors.

The availability of debtors' remedies under state law and the relief that might be afforded through private negotiations with creditors are other factors the Sixth Circuit has identified as relevant in deciding whether it would be an abuse to grant a Chapter 7 discharge in a particular case. There is some evidence that Debtors attempted to engage in private negotiations with some of their creditors. Several creditors were contacted by Debtors, however, only one agreed to make any changes favorable to Debtors. The limited success they had was insufficient to address their financial problems. The record is otherwise silent regarding this factor. As the United States Trustee bears the burden of proof on the motion, *In re Wright*, 364 B.R. at 643, the court will assume that there are no such state law remedies or private negotiations that will assist in resolving Pleat's financial problems.

## **CONCLUSION**

Having reviewed the totality of the circumstances as presented in this case, the court concludes that the UST has not proven by a preponderance of the evidence that Debtor Kenneth Pleat is not needy and, therefore, that granting him relief in this case would be an abuse of the provisions of Chapter 7.

The court will enter a separate order in accordance with this memorandum of decision denying the United States Trustee's motion to dismiss.